**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

TODD D. CRISP,

                 Petitioner,

vs.                             Case No.     2:10-cv-659-FtM-34CM
                                                  2:07-cr-95-FtM-34SPC

UNITED STATES OF AMERICA,

                 Respondent.

_____

## ORDER

This case is before the Court on the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. No. 1; Original Motion)[1] and Petitioners [sic] Motion to Vacate, Correct, or Set Aside Sentence Imposed Pursuant to 28 U.S.C. § 2255 (Doc. No. 7; Motion to Vacate).[2] The Government filed the United States' Response in Opposition to Motion to Vacate, Set Aside, or Correct Sentence, Pursuant to 28 U.S.C. § 2255 (Doc. No. 14; Response), and Petitioner filed a reply to the Government's Response. See Mr. Crisp's Traverse of the United States' Response (Doc. No. 17; Reply).[3] In resolving the instant matter, the Court considers Petitioner's Motion to Vacate, Reply, and attached exhibits, as well as the Government's Response.

---

[1]    Citations to Petitioner's criminal case file, 2:07-cr-95-FtM-34SPC, are denoted as "Crim. Doc. No. __." Citations to Petitioner's civil § 2255 case file, 2:10-cv-659-FtM-34CM, are denoted as "Doc. No. __."

[2]    With leave from the Court to file additional material to support his Original Motion, Petitioner filed the Motion to Vacate. This additional filing is drafted as a motion and addresses all the issues Petitioner lists in the Original Motion. Therefore, the Court refers primarily to the supplemental Motion to Vacate throughout this Order.

[3]    Petitioner also filed his Notice of Filing Attachments including Audio Recording (Doc. No. 18), which contained an audio recording of a conversation between himself and his previous attorney in state court.

## I.   Evidentiary Hearing Not Warranted

Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to resolve Petitioner's Motion to Vacate.  Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel.").[4]  Section 2255 expressly provides that a petitioner is not entitled to an evidentiary hearing to address the merits of his motion if "the motion and the files and records of the case conclusively show that [he] is entitled to no relief."  28 U.S.C. § 2255(b) (emphasis added).  Indeed, a court should order an evidentiary hearing only if the petitioner "alleges facts that, if true, would entitle him to relief."  Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002) (quoting Slicker v. Wainwright, 809 F.2d 768, 770 (11th Cir. 1987)).  Of course, to warrant such a hearing, the petitioner need only allege, not prove, reasonably specific and non-conclusory facts.  Id. at 715 n. 6.

An evidentiary hearing is not required, however, where the petitioner asserts allegations that are affirmatively contradicted by the record or makes claims that are patently frivolous.  Id.  Nor is such a hearing warranted where the court, in assuming the facts that petitioner alleges are true, determines that he still would not be entitled to any relief.  Id.;

---

[4]     Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

accord Diaz v. United States, 507 F. App'x 849, 852 (11th Cir. 2013).[5]

In the context of a Sixth Amendment claim of ineffective assistance of counsel, a §
2255 petitioner is entitled to relief only if he demonstrates both that his counsel's error
amounted to constitutionally deficient performance, and that he was sufficiently prejudiced
from that error. Strickland v. Washington, 466 U.S. 668, 687 (1984).[6]  As such, a petitioner
is not entitled to an evidentiary hearing if the Court, in assuming the facts that he alleges are
true, can conclusively determine from the record that either his counsel's conduct was not
constitutionally deficient or that he did not suffer sufficient prejudice.  West v. United States,
228 F. App'x 890, 895 (11th Cir. 2007) (per curiam) ("A district court . . . need not hold an
evidentiary hearing [on an ineffective assistance of counsel claim] if it can be conclusively
determined from the record that petitioner was not denied effective assistance of counsel."
(quoting Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999))).  Moreover, the Court
need not hold an evidentiary hearing to inquire as to counsel's true reasons for his alleged
misconduct.  See Gordon v. United States, 518 F.3d 1291, 1302 (11th Cir. 2008).  So long
as the Court can conceive a reasonable motivation or explanation for counsel's alleged

---

[5]  Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point. Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions issued on or after January 1, 2007. Fed. R. App. P. 32.1(a).

[6]  The Court notes that a lesser standard applies where a petitioner alleges that his counsel was ineffective due to an actual conflict of interest. See Mickens v. Taylor, 535 U.S. 162, 166 (2001) (explaining that a petitioner need not show prejudice, and courts will presume "such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding. . . . [b]ut only in 'circumstances of that magnitude,'" which "may also arise when the defendant's attorney actively represented conflicting interests." (internal citations omitted)); see also Cuyler v. Sullivan, 446 U.S. 335, 349-50 (1980) ("[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."). As discussed infra, an evidentiary hearing is not required because Petitioner's conflict allegations do not establish an actual conflict of interest that adversely affected his case.

misconduct, such a hearing is not required.  Id.  ("When [the Court] can conceive of a reasonable motivation for counsel's actions, we will deny a claim of ineffective assistance without an evidentiary hearing.").

For the reasons set forth in this Order, the Court determines that Petitioner is not entitled to any relief based on his Motion to Vacate.  Assuming Petitioner's facts as true to the extent not contradicted by the record, his counsel's performance did not amount to constitutionally deficient performance nor did Petitioner suffer sufficient prejudice from it.  Therefore, an evidentiary hearing is not warranted for the Court to resolve Petitioner's ineffective assistance claims.  Additionally, the Court finds that an evidentiary hearing is not required to resolve Petitioner's additional claims that—his Fifth Amendment rights were violated by a photo identification, his Fourth Amendment rights were violated by a false affidavit, he is actually innocent, and the prosecutor made improper statements during closing argument—as the Court determines that these claims are either procedurally barred or without merit.

## II.   Procedural Background

On August 1, 2007, the United States charged Todd D. Crisp (Crisp) with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  See Indictment (Crim. Doc. No. 16).[7]  Crisp pleaded not guilty and exercised his right to a jury trial at which he was represented by trial counsel, David Brener.  See Minute Entry (Crim. Doc. No. 19).  The trial commenced with jury selection on March 11, 2008, and

---

[7]   Prior to indicting Crisp, on July 10, 2007, the Government filed a criminal complaint against him alleging the same offense and supported by the affidavit of Detective Jennifer LaDelfa.  See Criminal Complaint (Crim. Doc. No. 1).

lasted four days.  See Clerk's Minutes (Crim. Doc. Nos.  91, 94, 97, 107).  The jury returned a verdict on March 14, 2008, finding Crisp guilty of the single charge.  See Verdict Form (Crim. Doc. No. 102).   Prior to Crisp's sentencing, on June 11, 2008, Brener, moved to withdraw from representation of Crisp due to a conflict of interest.  See Motion to Withdraw (Crim. Doc. No. 112).  The Court held a hearing on the Motion to Withdraw, and ultimately relieved counsel from his responsibilities in the case.  See Clerk's Minutes (Crim. Doc. No. 116); Order (Crim. Doc. No. 119); Transcript of Motion Hearing (Crim. Doc. No. 144; Withdrawal Hearing Transcript).  The Court appointed substitute counsel who also sought to withdraw due to Crisp's expressed dissatisfaction with his representation.  See Motion to Withdraw (Crim. Doc. No. 127).  As such, a third attorney, Landon Miller, represented Crisp at the sentencing.  See Order (Crim. Doc. No. 132); Notice of Appearance (Crim. Doc. No. 134).

On  December  4,  2008,  the  Court  sentenced  Crisp  to  a  term  of  imprisonment  of seventy-five months followed by three years of supervised release.  See Judgment at 2-3 (Crim. Doc. No. 149).  Crisp filed a notice of appeal on December 17, 2008.  See Notice of Appeal (Crim. Doc. No. 150).  In his appeal, Crisp challenged the Court's denial of his motion to suppress the firearm he was charged with possessing.  See 11th Cir. Order (Crim. Doc. No. 170) at 4.   On December 8, 2009, the Eleventh Circuit, per curiam, affirmed the conviction.  Id. at 6.  Crisp did not seek review by the Supreme Court.

On October 28, 2010, Crisp filed his § 2255 motion, see Original Motion, and on November 2, 2010, with the Court's permission, supplemented his Original Motion with his Motion to Vacate, see Order (Doc. No. 6); Motion to Vacate.  In his Motion to Vacate, Crisp

asserts five separately-titled grounds for relief: (1) both his initial and appellate counsel rendered ineffective assistance in violation of the Sixth Amendment; (2) the identification procedures used by law enforcement violated his Fifth Amendment right to due process; (3) the affidavit supporting the criminal complaint against him contained perjury in violation of the Fourth Amendment; (4) the prosecutor's improper closing arguments violated the Sixth Amendment; and (5) because he is innocent, his conviction violates the Fifth and Sixth Amendments. See Motion to Vacate at 2. On June 6, 2011, the Government filed its Response, arguing that Crisp's ineffective assistance claims and objections to perjury in the criminal complaint are without merit, and his remaining claims are procedurally barred. See Response at 6-22. Crisp then filed his Reply on August 19, 2011. See Reply.

## III. Applicable Law

Under Title 28, United States Code, Section 2255, a petitioner's right to challenge his sentence is limited to four specific grounds: (1) the imposed sentence violates the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeds the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice warrant relief of a sentence through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979).

Generally, a petitioner's challenge to his criminal conviction must first be advanced on direct appeal or else he is procedurally barred from presenting that claim later in a § 2255 proceeding. Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004). This is so because

a § 2255 collateral proceeding is not a substitute for an appeal. United States v. Frady, 456 U.S. 152, 165 (1982).  Hence, claims of fundamental trial errors that were available for review on direct appeal are not cognizable in a later § 2255 proceeding and will thus be dismissed. Lynn, 365 F.3d at 1233-34.

The procedural default rule generally applies to all claims, including constitutional claims.  Id. at 1234.  Nevertheless, a petitioner may overcome the procedural bar if he meets one of the two exceptions: (1) he must show cause for not raising the claim on direct appeal and that he suffered actual prejudice from the alleged error, see id. at 1234-35, or (2) he must show that the failure of the court to hear the merits of his claim would result in a fundamental miscarriage of justice, see Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).  The first exception, commonly referred to as the "cause and actual prejudice" standard, requires that a petitioner show both components, cause and actual prejudice, to overcome the procedural bar to his § 2255 claim.  Id. (citing Murray v. Carrier, 477 U.S. 478, 485 (1986), and Frady, 456 U.S. at 170).[8]  The second exception, fundamental miscarriage of justice, rarely applies as it requires that a petitioner show that the alleged constitutional violation "probably resulted in the conviction of one who is actually innocent."  Mills v. United States, 36 F.3d 1052, 1055-56 (11th Cir. 1994) (per curiam) (quoting Murray, 477 U.S. at 496) (emphasis added).  Mere, legal innocence will not suffice to meet the second exception.

---

[8]     Notably, the "cause and actual prejudice" standard of review for § 2255 proceedings is a significantly higher burden than the "plain error" standard of review used in direct appeals. Frady, 456 U.S. at 166-67.

Johnson, 256 F.3d at 1171.[9]

A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992). However, the procedural default rule does not apply to Sixth Amendment claims of ineffective assistance of counsel that are brought for the first time in § 2255 proceedings. Massaro v. United States, 538 U.S. 500, 509 (2003). The Supreme Court has instructed that when a petitioner brings a claim of ineffective assistance of counsel for the first time in a § 2255 proceeding, he will not be procedurally barred for failing to first raise the issue on direct appeal. Id. at 503-04, 509; Lynn, 365 F.3d at 1234 n. 17. Thus, a court will address such a claim regardless of whether it was raised on direct appeal. Massaro, 538 U.S. at 503-04, 509.

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's alleged conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense. Strickland, 466 U.S. at 687; Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, that his counsel's conduct was deficient, the Court adheres to the standard of reasonably effective assistance. Weeks, 26 F.3d at 1036. The petitioner must show, in light of all circumstances, that counsel's performance in question fell outside the "wide range of

---

[9]    The second exception to overcoming a procedural default is rare and exceedingly narrow in scope. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010).  It must be based on reliable evidence that was not presented at trial. Johnson, 256 F.3d at 1171. To satisfy this exception, the petitioner must "'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Id. (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)).

professionally competent assistance." Id. To satisfy the second requirement, that counsel's deficient performance sufficiently prejudiced the defendant, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). Thus, where a petitioner has been convicted at trial, he must prove that there is a reasonable probability that, absent counsel's alleged error, the jury would have found him not guilty of the underlying offense. See Strickland, 466 U.S. at 695.

In determining whether a petitioner has met both prongs of deficient performance and prejudice to warrant relief, the Court considers the totality of the evidence. Strickland, 466 U.S. at 695. However, the Court need not address the first prong before addressing the second prong. Id. at 697. Rather, if the Court determines that the petitioner cannot establish that he suffered sufficient prejudice, then it need not address whether counsel's performance was constitutionally deficient. Id. ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").

## IV.     Trial Evidence

During Crisp's trial, the Government presented the following witnesses:  Tyroncia Powell (Powell), Crisp's girlfriend, Alice Bernstein (Bernstein), an Enterprise Leasing Corporation employee, Detective Arturo Gonzalez (Gonzalez), an officer with the Ft. Myers Police Department at the time of the charged offense, Daniel G. O'Kelly (O'Kelly), an ATF agent, Anthony Petrucci (Petrucci), the officer who fingerprinted Crisp when he was first arrested, and Linda Foster (Foster), a senior crime laboratory analyst with the Florida Department of Law Enforcement (FDLE) who processed the fingerprint found on the firearm

and identified it as belonging to Crisp. See generally Jury Trial Tr. (Crim. Docs. 158-60).[10] The key evidence against Crisp was Gonzalez's testimony and the fingerprint, which the Government introduced and explained to the jury through Foster's testimony.

According to his testimony, on May 4, 2004, at approximately 10:48 a.m., then-Officer Gonzalez was traveling westbound on Michigan Avenue in his patrol car when he observed a white van making a right turn off of Bert Drive, directly in front of his vehicle and proceeding in the same direction that Gonzalez was traveling. Jury Trial Tr. at 73-75. While the van was driving in front of him, Gonzalez noticed that "[i]t had a huge chunk of the back window broken and missing." Id. at 75. He then ran a registration inquiry, found that the vehicle was an Enterprise Rental vehicle, and continued to follow it from a distance of twenty to thirty feet at a speed of twenty to thirty miles per hour for less than a block. See id. at 75-76. At that point, prior to reaching the intersection of Michigan Avenue and Shoemaker Boulevard, the van made a right turn into the back yard of a residence, drove up between a house and another structure, and came to an abrupt stop. See id. at 76-77. Remaining twenty to thirty feet behind the van, Gonzalez also came to a stop somewhat offset on the left-hand or driver's side of the van where he observed the lone occupant of the vehicle, the driver, immediately exit. See id. at 77, 82-83.

Gonzalez testified that when the driver exited his vehicle, he looked back towards Gonzalez, who was still sitting in his police car with a clear view of the individual. Id. at 83-84.

---

[10]    The transcript of Crisp's jury trial is divided into three volumes (Crim. Doc. Nos. 158-60) and is cited collectively in this Order as "Jury Trial Tr." The defense's opening argument and the government's closing argument were not included in the original trial transcripts but have since been filed separately. See Transcript of Excerpt of Jury Trial (Defense Opening Statement) (Crim. Doc. No. 176; Opening Tr.); Transcript of Excerpt of Jury Trial (Government Closing Argument) (Crim. Doc. No. 178; Closing Tr.).

The two made eye contact, and Gonzalez immediately recognized the driver as Todd Crisp, who he had seen before. See id. at 84. Gonzalez observed Crisp run in a westbound direction and behind a residence. See id. at 85. Before approaching the vehicle, Gonzalez reported a suspicious van to his dispatcher and provided the dispatcher with the driver's name, Todd Crisp. See id. at 87. He then approached the vehicle, and asked the dispatcher to contact the rental company. See id. Through dispatch, Gonzalez learned that Todd Crisp was not on the lease agreement. See id. The dispatcher further advised that Enterprise would be sending someone to retrieve the vehicle. See id.

While Gonzalez remained at the scene several women arrived. See id. at 87-88. The first were two women in a gray Lexus who refused to identify themselves. Id. at 88, 103-04. They were followed by Tyroncia Powell, Crisp's girlfriend, who spoke to Gonzalez briefly before leaving. Id. at 88-89. Last, Shirly Lias, Crisp's mother, arrived and spoke to Gonzalez before leaving with the two women in the gray Lexus. Id. at 88, 103-04. Powell returned later, explaining that she had called a tow truck to pick up the vehicle because she did not have the keys. Id. at 88-89.

Prior to Powell's return, Gonzalez conducted an inventory search of the van to document its contents and protect against claims that anything had been removed from the vehicle. See id. at 89-92. In his inventory report, Gonzalez accounted for the following: "[a] yellow Sean John jacket, a black Burk's Bay leather jacket, miscellaneous clothes, one pair 11 and a half Reebok's men's shoes, one pair Timberland boots, one pair Timberland flip-flops, one box of the Transporter DVD, three metal pots with handles" and one Rossi handgun. Id. at 93-94. Gonzalez found the handgun in the right-hand pocket of the yellow

11

Sean John jacket which he had located in the back seat of the van. See id. at 94. The firearm was the only item of those he inventoried that Gonzalez collected.   Gonzalez also took photographs of the firearm, the van, and the jacket. Id. at 95. After clearing the firearm, and removing two Winchester .38 Special bullets, Gonzalez delivered both the gun and the bullets to the Fort Myers Police Department. See id. at 95-96. Other than the firearm and bullets, none of the other items in the van were sent to the lab. See id. at 161-162.

At trial, trial counsel cross-examined Gonzalez about discipline he had received in the past for untruthfulness, an incident which Gonzalez explained involved lying to his supervisor. See id. at 112. When Gonzalez testified that he had brought the issue to the attention of his supervisors rather than being caught, trial counsel impeached him with testimony from a pretrial motion hearing in which Gonzalez had testified that his supervisors had raised the issue. See id. at 112-115. In his cross-examination, trial counsel elicited testimony from Gonzalez that he was not paying attention to the driver of the van until after the driver got out of the car, that he did not attempt to chase the driver, that he only observed the driver for less than a couple seconds (as he was hidden from sight after he ran westbound behind the house), and that he did not put out any alert for Todd Crisp. See id. at 115, 119-120, 123, 134-35, 157, 164. Relying on the dispatch logs, trial counsel questioned Gonzalez about the fact that Crisp's name did not appear in the logs, even though Gonzalez testified that he relayed that information to dispatch, as well as the fact that the dispatch records reflected that he had reported a "suspicious person," rather than a "suspicious vehicle" as Gonzalez had testified that he reported. See id. at 124-25, 133. With regard to his identification of Crisp, trial counsel elicited testimony that Gonzalez could not remember what Crisp or the driver

12

was wearing, whether he had facial hair, whether he had dreadlocks, or tattoos, and had not noted any such characteristics in his report. See id. at 168-169. Two days after the incident, another detective showed Gonzalez a single photograph of Todd Crisp to ensure that the individual in the photograph was the same person Gonzalez had seen fleeing the scene that day. See id. at 171-74. The photograph had Todd Crisp's name and description printed on the right side. Id. at 171. While it is typical for the written case report to contain a notation of whether or not there had been a photographic identification, Gonzalez did not make such a notation in this case. See id. at 175-76. Before excusing Gonzalez, the Government introduced a driver's license query he had made on May 4, 2004, and which dispatch had printed out for him because he was unable to do so at the scene. See id. at 216-19.

The Government also presented the testimony of Crisp's girlfriend, Powell, who rented the Enterprise van in question on May 1, 2004, and drove it to Tampa with Crisp and her children to visit Busch Gardens. See id. at 18-21. After getting in a fight with Crisp, Powell left him at a K-Mart when he went inside the store, and returned to Ft. Myers without him. See id. at 22, 28. She testified that she had given Crisp limited permission to drive the rental car to run errands, but not to use the car on May 4, 2004. See id. at 22-23. That day, Powell had left the vehicle in her driveway. See id. at 26. She testified that she did not remember whether someone called her to the residence on Shoemaker Boulevard or if she was just driving by when she saw Crisp's sister and possibly his mother standing there, but either way, she stopped and got out of her car. See id. at 24-25. On cross-examination, Powell testified that she did not have any knowledge of Crisp driving the van that day, and trial counsel explored the resemblance and physical similarities between Crisp and his brother, Torry

13

Crisp.  See id. at 28-29.  On redirect, the Government introduced a picture of Torry Crisp, prompting trial counsel to recross Powell about things such as whether each brother had dreadlocks and whether their appearances differed at different times.  See id. at 35, 37-41, 45-46, 48-49.  Trial counsel also published different photographs of the brothers having Powell identify which brother was depicted in each.  See id. at 40-41, 44-45.

The Government presented the expert testimony of Linda Foster, who, after being qualified as an expert, explained the science behind fingerprinting and identified a left thumb fingerprint she found on the cylinder of the revolver Gonzalez recovered from the van as belonging to Crisp.  See id. at 309-353.  Trial counsel conducted a lengthy cross-examination of the expert, inquiring about the difficulty in finding a fingerprint on a firearm, the recognized points of identification required in various countries, as well as historically in the United States, what it would take for her to determine that the print did not match Crisp, whether two people could ever have the same fingerprints, the fact that there is no way to date a fingerprint or otherwise determine when it was left on a surface, and even who photographed the fingerprint for analysis.  See generally id. at 354-391, 397-402, 406-407.

After the Government rested its case in chief, trial counsel called Evelyn Lewis, the owner of the residence on 1537 Shoemaker Boulevard, to demonstrate that there were trees on the property that could have obstructed a person's view when driving onto the property. See id. at 442-53.  In addition to a records custodian, who authenticated police dispatch records from the date of the incident, the defense introduced the testimony of Wendy Roberts, the dispatcher who took the call from Gonzalez.  See id. at 461-65.  Roberts testified that, if a police officer identified a suspect over the communication channel, she would make

14

a record of it.  See id. at 466-68.  She also reviewed the dispatch record and acknowledged that she typed in code 172, representing a suspicious person, because that is what the officer reported.  See id. at 468-69.  On cross-examination, Roberts noted that the code for a suspicious vehicle is 173, that there were two other dispatchers also communicating with Gonzalez that morning, and Roberts was not privy to the information they received from Gonzalez.  See id. at 473-75.  Roberts also explained that a positive identification may not always be noted, depending on the dispatcher.  See id. at 484.

Trial counsel also called Ray McCaslin (McCaslin), a private investigator who, at the direction of the defense, traveled to the scene of the incident and traced the route from Bert Drive to the driveway of 1537 Shoemaker Boulevard.  See id. at 488-99.  Outside the presence of the jury, trial counsel proffered McCaslin's testimony regarding the creation of video recordings that trial counsel wished to introduce as evidence that Gonzalez could not have seen Crisp from inside his police vehicle.  See id. at 501-09.  After hearing argument from trial counsel and the Government, the Court ultimately ruled the videos were inadmissible.  See id. at 545-562.

The defense's last witness was Detective Jennifer LaDelfa (LaDelfa), who testified that there was no indication in the case report that a photograph identification had been done.  See id. at 583-84.  On cross-examination, LaDelfa testified that a photo array was not done because "Officer Gonzalez stated that he knew who had left the van and identified him."  Id. at 587.  The Government did not present any rebuttal evidence, the case was submitted to the jury, and the jury returned a verdict finding Crisp guilty.  See id. at 602, 618.

## V.      Analysis

### A.      Ground One:  Ineffective Assistance of Counsel

The Court turns first to Crisp's claim of ineffective assistance of counsel in which Crisp identifies ten areas of deficient performance by trial and appellate counsel.[11]  As previously noted, a petitioner who asserts a Sixth Amendment violation of ineffective assistance of counsel must prove: (1) that his counsel's alleged conduct constituted deficient performance, and (2) that he was sufficiently prejudiced from counsel's error.  Strickland, 466 U.S. at 687. The petitioner must demonstrate both components to succeed on an ineffective assistance claim. Id. Consequently, if the Court first determines that the petitioner did not suffer sufficient prejudice, then it need not address whether his counsel's performance was deficient. Id. at 697; Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner]'s ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

First, to show deficient performance, the petitioner must establish by a preponderance of the evidence that, "in light of all the circumstances, counsel's performance was outside the wide range of professional competence." Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006) (citing Strickland, 466 U.S. at 690).  This is a heavy burden, as the petitioner must show that "no competent counsel would have taken the action that his counsel did take." Strickland, 466 U.S. at 689.  It is well-established that there are "countless ways to provide

---

[11]      Specifically, Crisp lists the following ineffective assistance of counsel claims: (1) failure to investigate and prepare for trial; (2) failure to call witnesses; (3) failure to present the best possible defense; (4) conflict of interest; (5) failure to call a fingerprint expert; (6) making statements that implied Crisp's guilt in trial counsel's opening statement; (7) failure to impeach LaDelfa; (8) failure to impeach Gonzalez and Foster; (9) failure to allow Crisp to testify at trial; and (10) failure to bring meritorious claims on direct appeal.

effective assistance in any given case." Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (quoting Strickland, 466 U.S. at 689).  In determining whether counsel's challenged conduct constitutes deficient performance, the Court's review is highly deferential. Osborne, 466 F.3d at 1305-06.  The Court must analyze the facts at the time of counsel's conduct and from counsel's perspective.  Weeks, 26 F.3d at 1036 (citing Strickland, 466 U.S. at 689).  The petitioner must overcome the strong presumption that his counsel rendered adequate assistance, making all decisions with reasonable professional judgment, and that the challenged action or inaction "'might be considered sound trial strategy.'" Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

Second, to prove prejudice, it is not enough for the petitioner to show that counsel's alleged error had some conceivable effect on the outcome of the proceeding.  Id. at 693. Rather, a petitioner must show that there is a reasonable probability that, but for his counsel's deficient performance, the result of the proceedings would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome [of the case]."  Id.  When a petitioner claims that he was prejudiced by counsel's failure to present certain evidence during trial, the necessary inquiry is whether such evidence is "material."  Osborne, 466 F.3d at 1307-08 (approving a district court's application of the "materiality standard" in Brady v. Maryland, 373 U.S. 83 (1963) to a defendant's claim of ineffective assistance based on his counsel's failure to present evidence to determine if he suffered sufficient prejudice).  Evidence is material only when there is a reasonable probability that, had the evidence been presented, the result of the proceeding would have been different, namely, the petitioner would have been acquitted of the underlying offense.

17

Id. at 1308; see also Jennings v. McDonough, 490 F.3d 1230, 1243 (11th Cir. 2007) ("The prejudice prong of Strickland incorporates the same standard used for assessing the materiality of evidence under Brady, i.e., 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'") (quoting Strickland, 466 U.S. at 694). Hence, if the evidence that counsel failed to present is not material, then the petitioner's ineffective assistance claim will be denied because he has failed to establish that he was sufficiently prejudiced from that error. See Osborne, 466 F.3d at 1308.

> **1.     Ineffective Assistance of Counsel Claims Six and Nine: Counsel's Comments in Opening Statement and Failure to Call Crisp as a Witness**

As an initial matter, the Court finds that two of Crisp's claims, claims six and nine, are directly refuted by the record.   In his sixth claim Crisp contends that trial counsel made statements in his opening statement that implied Crisp's guilt, specifically counsel argued that Crisp owned the clothes and jacket that Gonzalez found in the vehicle. See Motion to Vacate at 15.  A review of the transcript of the defense's opening statement reveals no such remarks. See generally Opening Tr.  Indeed, trial counsel argued to the contrary:

> The yellow jacket was not on Mr. Crisp's person.  It was in the back of a van, along with a bunch of other clothing.  It was not concealed in the van, itself, on the floor, on the floorboard or under the visor, but rather was found in a man's jacket, a yellow jacket.  In addition to the yellow jacket, there was numerous items of clothing in there.  None of this clothing, with the exception of the yellow jacket, was impounded by Officer Gonzalez.  The Government has no idea whether any of the clothing belongs to Todd Crisp, fits Todd Crisp, or has any trace evidence belonging to Todd Crisp, because the evidence was never sent to the lab.  There was clothing that was put back in the van and released to Enterprise, and that is gone.  It was never tested.

Id. at 8-9 (emphasis added).   Accordingly, Crisp's sixth claim of ineffective assistance of counsel is conclusively refuted by the record.

Similarly, the record refutes Crisp's ninth ineffective assistance of counsel claim—that trial counsel did not permit him to testify on his own behalf when he made explicit demands to do so.  See Motion to Vacate at 22-24.  If defense counsel refuses to accept a defendant's decision to testify and call him to the stand, counsel has not acted competently and has not provided reasonably effective assistance of counsel. See Gallego v. United States, 174 F.3d 1196, 1197 (11th Cir. 1999); see also Hester v. United States, 335 F. App'x 949, 951-52 (11th Cir. 2009).  Ordinarily, the Court conducts an evidentiary hearing to determine whether a defendant requested to testify and trial counsel improperly refused that request.  See Geer v. United States, 354 F. App'x 417, 419 (11th Cir. 2009).  However, upon review of the record no such hearing is warranted here.  In this case, the record reflects that the Court informed Crisp of his right to testify,[12] and, at the conclusion of the defense's case, the Court had the

---

[12]    The Court instructed Crisp as follows:

THE COURT: Then it would be my intention, obviously subject to any motions, to proceed immediately into Mr. Brener's case.  So I want to take this opportunity to speak with Mr. Crisp. Mr. Crisp I know that Mr. Brener's told you this before, but I'm going to tell you, you have the right to testify in this case and you have the right not to testify.  That choice is entirely yours and at no time can anyone force you to testify or not to testify.  You should consult with your attorney and carefully consider whether or not you wish to testify, but ultimately, it's your choice, not your lawyer's.  Do you understand that, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: You don't have to tell me your decision right now.  When we come back and Mr. Brener begins his case, if you take the stand, then I'll assume that you decided and you want to testify.

THE DEFENDANT: Yes, ma'am.

THE COURT: If you don't take the stand or if he doesn't call you as a witness, then I'm going to assume you didn't want to testify.  Is that fair?

following exchange with Crisp:

> THE COURT: As I told him, if he didn't take the stand, I would assume that was his decision, but since we are outside the presence of the jury - - and I gave that instruction in that way, expecting that it would be in the course of the case, but since the jury isn't here, Mr. Crisp, do you understand your right to testify and not to testify?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: All right.  And have you made a decision not to testify?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And is that your decision?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you've, I assume, gotten whatever advice you felt you needed to make that decision, sir?
>
> THE DEFENDANT: Absolutely, ma'am.

Jury Trial Tr. at 594-95.  Because the record affirmatively refutes Crisp's allegation that he wanted to testify but his counsel refused to allow him to do so, he cannot establish that his trial counsel rendered ineffective assistance in this aspect.  See Gay v. United States, No. 1:09-cr-0335-CAP, No. 1:12-cv-2704-CAP, 2013 WL 5965630, at *8 (N.D. Ga. Nov. 7, 2013) (finding that, where trial court had asked defendant if he wanted to testify and if that was his decision, petitioner could not show deficient performance or prejudice as to his ineffective

---

THE DEFENDANT: Yes, ma'am.

THE COURT: And if he doesn't call you as a witness and you did want to testify, I'm going to ask you to let the Court know that at that time so that we can figure out what we're going to do about it; okay?

THE DEFENDANT: Yes, ma'am.

Jury Trial Tr. at 409-10.

assistance claim).   Therefore, the record before the Court conclusively demonstrates that

Crisp's ninth claim of deficient performance is due to be denied, and no evidentiary hearing

as to this claim is necessary.  See Hester, 335 F. App'x at 952-53 (affirming denial of motion

to vacate without an evidentiary hearing where the face of the record did not support claim

that petitioner's testimony would have affected the outcome of his trial).   Having addressed

these two claims, the Court turns next to Crisp's remaining claims for ineffective assistance

of counsel before addressing his additional grounds for relief.

> **2.      Ineffective Assistance of Counsel Claims One and Three:  Failure to Investigate and Present Defenses**

Crisp's first and third claims of ineffective assistance of counsel are essentially the

same:  that trial counsel did not investigate his case prior to and in preparation for trial, and

therefore did not present his best defense. See Motion to Vacate at 6-10.  Crisp argues that

with a better investigation, trial counsel would have learned that Crisp was in Tampa, Florida

during the alleged incident, and could have presented hotel receipts and possible witnesses.

See id. at 7,9.  Crisp also suggests that trial counsel would have found "other witnesses that

came forward with information relative to the scene of the incident, how and who broke the

window on the van, and who placed the items, and the jacket, containing the firearm in the

vehicle." Id. at 7; see also Reply at 3 ("Mr. Brenner [sic] failed to obtain hotel receipts or

contact hotel employees who could have verified Mr. Crisp's presence in Tampa[,] Florida at

the time Officer Gonzalez claimed to have seen him exit the van.").   Crisp also claims that

trial counsel did not present the best defense because he chose to reargue the motion to

suppress.

The Government responds that Crisp's first claim lacks specificity and conflicts with counsel's trial strategy, namely that Crisp was not the person seen running from the van and it was not his fingerprint on the firearm. See Response at 9. Further, the Government argues that the information Crisp contends that trial counsel failed to uncover—who broke the window and who put the clothes in the van—is immaterial to rebutting the eyewitness and fingerprint evidence. See id. at 9-10. With respect to his alleged presence in Tampa, the Government maintains that Crisp does not allege that he told trial counsel he was there when the incident occurred or how counsel otherwise should have known of this fact. See id. at 10. In his Reply, Crisp asserts that he did tell trial counsel that he was not in Fort Myers when the van was discovered, but does not add any further specificity. See Reply at 2.

Defense "counsel generally has a duty to make reasonable investigations and to make reasonable decisions based on those investigations." Elso v. United States, ____ F. App'x ____, No. 12-13831, 2013 WL 6767832, at *1 (11th Cir. Dec. 24, 2013) (citing Strickland, 466 U.S. at 691). A failure to investigate may support a claim for ineffective assistance of counsel, but to prevail on such a claim, a petitioner must identify with specificity what an investigation would have revealed and how it would have altered the outcome of the trial. United States v. Adair, No. 03-016, 2008 WL 5082886, at *5 (E.D. La. Nov. 24, 2008). Indeed, "defense counsel is 'not required to pursue every path until it bears fruit or until all conceivable hope withers.'" Id. (quoting Lovett v. Florida, 627 F.2d 706, 708 (5th Cir. 1980)). With respect to uncalled witnesses, "[a] petitioner must show there is a reasonable likelihood that an ordinarily competent attorney conducting a reasonable investigation would have located the witness by using a reasonably diligent effort." Brown v. McNeil, No. 09-61055-

Civ-SEITZ, 2010 WL 6405670, at *10 (S.D. Fla. July 12, 2010).

Although Crisp generally complains that trial counsel did not present his best defense, he does not provide any information whatsoever about what he contends the best defense might have been.  Moreover, to the extent he argues that trial counsel should have found evidence of hotel receipts to prove that he was in Tampa, Crisp does not allege where counsel would find such receipts, the name of the hotel where he stayed, how long he was there, or the names of anyone who could place him in Tampa two days after Powell left him at a K-mart there.  Therefore, Crisp does not allege how a reasonably diligent attorney would have located the unnamed witnesses and unidentified receipts and what that evidence would have proven.  See Adair, 2008 WL 5082886, at *5.  Crisp's allegations in these claims are entirely speculative and insufficient to establish either deficient performance or prejudice as necessary to meet the requirements of an ineffective assistance of counsel claim.

### 3.   Ineffective Assistance of Counsel Claims Two and Five: Failure to Call Witnesses

In his second ineffective assistance of counsel claim, Crisp contends that trial counsel failed to call Rashonda Churchwell, who made a statement to trial counsel's paralegal that she was the one who had broken the van's window and thrown the clothes in the van, as well as Crisp's brother, Torry Crisp, who would have testified that he was the one driving the van that day.  See Motion to Vacate at 8; see also Reply at 2-3.  In his fifth ineffective assistance of counsel claim, Crisp argues that trial counsel failed to call an expert witness to rebut the Government's fingerprint expert and instead chose to cross-examine Foster without proper preparation and skill in the science of fingerprints.  See Motion to Vacate at 13-14.  The

Government suggests that the witnesses that Crisp believes should have been called "would not have addressed a fact of consequence at trial; namely, was the petitioner driving the van when Detective Gonzalez observed it and was the petitioner in possession of the firearm located inside the van." Id. at 11.  The Government also argues that Crisp does not elaborate on what a defense fingerprint expert would have testified to at trial.  See id. at 14-15.

Counsel's conduct is not deficient so long as the Court finds that the particular approach that he has taken could be considered sound trial strategy.  Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000).  When reviewing counsel's acts or omissions, the perspective is an objective one; the Court only asks "whether some reasonable lawyer could have conducted the trial in that [same] manner." Id. at 1315 n. 16.  Therefore, even if it appears that counsel's decision was wrong, such action will only constitute deficient performance if it was so unreasonable that no competent attorney would have chosen that course of action.  Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983) (per curiam).

> The purpose of analyzing the reasonableness of counsel's representation pursuant to Strickland's first prong is not to grade counsels skill; rather, it is to determine whether the counsel's performance was constitutionally acceptable. "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial."

United States v. Smith, No. CRIMA 4:97CR35, 2006 WL 2578919, at *4 (N.D. Ga. Sept. 5, 2006) (quoting Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995)).

Moreover, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." Waters, 46 F.3d at 1512.  "This is especially true because allegations of what a witness would have

testified are largely speculative. Speculation about what witnesses could have said is not enough to establish the prejudice-prong of Strickland." Jones v. McNeil, No. 07-22367-CIV, 2009 WL 1758740, at *6 (S.D. Fla. June 22, 2009); see also Brown, 2010 WL 6405670, at *10. Of course, "[c]ounsel cannot be deemed deficient for failing to call an unavailable witness." Brown, 2010 WL 6405670, at *10. And a petitioner cannot maintain an ineffective assistance of counsel claim "simply by pointing to additional evidence that could have been presented." Id. (quoting Van Poyck v. Fla. Dep't of Corr., 290 F.3d 1318, 1324 (11th Cir. 2002)).

Crisp's second and fifth ineffective assistance claims fail because he has not demonstrated that counsel's alleged error in failing to present the testimony of Rashonda Churchwell, his brother Torry Crisp, and/or a fingerprint expert amounted to deficient performance or that he was prejudiced by such failures. As to Rashonda Churchwell's alleged testimony, that she broke the window and she placed clothes in the back of the van, such explanation is not material to Crisp's alleged possession of the firearm and does nothing to detract from the evidence of Crisp's fingerprint on the firearm. Regardless of who put the clothing in the van, Crisp does not contend that Churchwell would have testified that neither the jacket nor the firearm belonged to him. Further, the identity of the person who put the jacket in the car or who broke the window would not have established that Crisp was not driving the car or that he did not have possession of the firearm in the time frame alleged in the Indictment. Trial counsel could have determined that calling Churchwell to testify about these collateral issues would have distracted the jury from focusing on the identity of the driver of the car that day. More importantly, as Churchwell's potential testimony was

25

immaterial, Crisp cannot establish that the outcome of the trial would have been different if she had testified.

With respect to the testimony of his brother, Torry Crisp, such testimony would have been more relevant because Crisp alleges that his brother would have testified that he, not Crisp, was driving the van that day.   Initially, the Court notes that the record contradicts Crisp's contention that Torry Crisp would have provided such testimony.   <u>See</u> Jury Trial Tr. at 590 ("THE COURT: Mr. Brener, is it your belief that Torry Crisp is going to testify that he was the driver of that car?   MR. BRENER: No, No.").   Nevertheless, even if Crisp had intended for his attorney to call his brother to give that testimony, trial counsel's performance would not have been deficient for failing to call a witness to give testimony that contradicted Crisp's prior sworn testimony that he was driving the car.[13]   <u>See generally</u> <u>Salter v.</u>

---

[13]   During a suppression hearing in state court, Crisp gave the following testimony:

Q:  Mr. Chrisp, are you the defendant in State v. Chrisp?
A:  Yes, sir.
Q:  Okay.  And that is case [sic] to which it is alleged that you were driving a van on May the 4th, 2004?
A:  Yes, sir.
Q:  And, under oath, would you please testify as to whether or not you were in fact driving the van on May the 4th of 2004?
A:  Yes, sir.
Q:  Okay.  And in what area were you driving the vehicle?
A:  Delmar Community in - - off Burke and Michigan Ave,
Q:  Okay.  And at some point you parked the vehicle?
A:  Yes, sir.
Q:  Okay.  And do you recall where you parked the vehicle?
A:  Yes, sir.  1527 Veronica Shoemaker.
Q:  Okay.  Was that a private residence?
A:  Yes, sir.
Q:  Okay.  And what did you do then?
A:  I just parked the van and walked off.

<u>See</u> Transcript of Taped Proceedings: Amended Motion to Suppress (Crim. Doc. No. 32-4; Suppression Hearing Tr.) at 5-6.

McDonough, No. 3:04cv426/MCR/MD, 2006 WL 3337498, at *18 (N.D. Fla. Oct. 2, 2006) (quoting state court denial of state motion for post conviction relief based on a failure to call a witness who would contradict defendant's sworn testimony). The record further establishes another reason trial counsel did not call Torry Crisp. Despite previously appearing at the trial, Torry Crisp apparently was unable to obtain a ride to Court on the day he might have testified, and therefore was unavailable. See Jury Trial Tr. at 588, 591. Faced with that situation, trial counsel had to decide whether to ask the Court for more time to get Torry Crisp to court or rest, and he announced to the Court that, after failing to reach Torry Crisp by phone and consulting with Todd Crisp, that the testimony was not essential to the defense. See id. at 594 ("MR. BRENER: I've spoken to my client, Mr. Crisp, about his brother, his brother's non-appearance. It is possible that we could get him here within a relatively reasonable period of time. But we've decided not to call him as a witness.").

While Crisp alleges in his Motion to Vacate that his brother was unavailable as a result of trial counsel's mistake, see Motion to Vacate at 8, regardless of why his brother was not present, the record reflects that defense counsel made a strategic decision not to try to get him to the courthouse. These are the types of strategic decisions that courts hesitate to second guess. See Waters, 46 F.3d at 1512 ("While attorneys may disagree as to how many or what particular witnesses to call, such is the stuff out of which trials are made." (quoting Solomon v. Kemp, 735 F.2d 395, 404 (11th Cir. 1984))). In light of Crisp's sworn testimony contradicting the testimony he contends his brother would have given, the fact that counsel thoroughly explored the similarities between the appearance of the two brothers in the presence of the jury, and counsel's statements on the record in the presence of Crisp that

27

"we've decided not to call him as a witness," Crisp has failed to overcome the strong presumption that his counsel's representation was reasonable and that his challenged conduct was considered sound trial strategy.[14]

Moreover, even if it was deficient performance not to call Torry Crisp or ensure his appearance at trial, Crisp has failed to demonstrate a reasonable probability that if his brother had testified, the outcome of the trial likely would have been different.[15]   The Government presented compelling evidence that incriminated Crisp as having been the driver of the van, but more importantly, as having possessed the firearm.   Particularly, Gonzalez provided confident testimony regarding his identification of Crisp, and corroborated the timing of that identification with the driver's license inquiry printed on that day.   The Government also introduced reliable scientific evidence that Crisp left a latent fingerprint on the firearm. Additionally, the Government produced strong circumstantial evidence that Crisp had been driving the car because his mother and his girlfriend showed up very shortly after the driver of the van got out and took off running, and because his girlfriend, Powell, did not have the

---

[14]     In reaching the conclusion that counsel's conduct did not amount to deficient performance, the Court does not necessarily posit that Crisp's counsel chose not to present his brother's testimony for the above-mentioned reasons. Rather, the Court's analysis is a hypothetical and objective one, asking only "whether some reasonable lawyer could have conducted the trial in that manner." Chandler, 218 F.3d at 1315 n. 16 (emphasis added). The critical inquiry is not whether counsel's failure to call Torry Crisp was a deliberate choice. Id. Rather, "[the Court's] inquiry is limited to whether this [action] . . . might have been a reasonable [choice]." Id. See also Harrington, 131 S. Ct. at 788-791 (determining that counsel's failure to present forensic experts was not deficient performance by applying an objective and hypothetical inquiry, and concluding there were several potentially reasonable explanations for not doing so).

[15]     Crisp's failure to establish that his counsel's conduct amounts to constitutionally deficient performance is sufficient to dismiss his Sixth Amendment claim of ineffective assistance. Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both [deficient performance and sufficient prejudice] of the inquiry if the defendant makes an insufficient showing on one."). However, out of an abundance of caution, this Order also addresses Crisp's failure to demonstrate that he was sufficiently prejudiced from counsel's conduct as an additional basis for dismissing his Sixth Amendment claim.

keys to the van and had to have the vehicle towed but was ultimately able to return the keys to Enterprise, demonstrating that whoever had been driving the van had returned the keys to her.

Notably, despite the fact that Torry Crisp did not testify, the jury was presented with evidence to support the possibility that Gonzalez mistook Crisp for his brother. Both the Government and trial counsel introduced photographs of Crisp and his brother, and, through Powell's testimony, counsel explored how much or how little the two looked alike such that one could be mistaken for the other. See Jury Trial Tr. at 28-29, 35, 37-41, 44-49. Trial counsel also questioned Gonzalez as to whether the person he saw had dreadlocks or facial hair, as both brothers may have had around the time of the incident. See Jury Trial Tr. at 169-70. Therefore, the jury had evidence based upon which it could consider whether Gonzalez had mistaken Torry Crisp for his brother, Todd.

Although it would have been more persuasive for Torry to take the stand and say that he was the one driving the car, as Crisp's brother, the Government would have been able to impeach Torry Crisp's credibility by establishing that he may have a motive to lie in order to help his brother. See United States v. Calles, 271 F. App'x 931, 943 (11th Cir. 2008) (per curiam) (finding that defendant's new evidence in the form of his brother's testimony probably would not have produced a different result). Even so, in making this determination, the Court must essentially speculate as to whether Torry would have taken the stand and whether he would have testified that he was the one driving the van on the day in question. While this is not supported by the record in that trial counsel represented that Torry Crisp would not be providing such testimony, the Court nevertheless concludes that even if Torry Crisp had given

29

that testimony, Crisp has not shown a reasonable likelihood that the outcome of the trial would have been different.  If his brother had testified as suggested, the jury might have assumed that he was lying to protect his brother, and even with his testimony, the fingerprint on the gun which placed Todd Crisp in possession of that firearm remains.   Given Gonazalez's unwavering identification of Crisp, his fingerprint on the firearm, and the immediate arrival of Crisp's family at the scene after the driver fled, the Court is unconvinced that there is a reasonable probability that had his brother's testimony been presented, it would have persuaded the jury to find that Crisp had not possessed the firearm within the time frame charged in the Indictment.  Accordingly, Crisp's second ineffective assistance of counsel claim is due to be denied.

As to Crisp's fifth ineffective assistance of counsel claim, the alleged failure to call a fingerprint expert, Crisp is correct that the record reflects trial counsel retained a fingerprint expert but decided not to call him, and instead relied on his cross-examination of the Government's expert.  See Jury Trial Tr. at 264 ("I may call him, Detective LaDelfa, and potentially Ace Brown, the fingerprint consultant.  And I need to consult with him tonight, look over some of the testimony to determine that.").  However, Crisp's further allegation that trial counsel's cross-examination was insufficient and ill-prepared, and therefore constitutes ineffective assistance of counsel, is not supported by the record.  See Motion to Vacate at 13-14.  The fact that trial counsel consulted with a fingerprint expert but chose not to call him in no way suggests that his decision constitutes ineffective assistance of counsel.[16]  See Jury

---

[16]   Petitioner cites Schell v. Witek, 218 F.3d 1017, 1028-29 (9th Cir. 2000) for the proposition that the failure to consult with an expert may support a claim for ineffective assistance of counsel where the fingerprint is the only evidence connecting the petitioner to the crime.  There, the petitioner alleged that his attorney only

Trial Tr. at 264, 330-31.  Importantly, Crisp has provided no information as to what testimony the expert would have given or how the expert would have rebutted the Government's testimony.  Instead, he generically concludes that "the jury would have had an opportunity to evaluate the Government's fingerprint expert[']s testimony."  Motion to Vacate at 14.  The record reflects that trial counsel vigorously cross-examined the Government's expert and demonstrated through such cross-examination that he did adequately prepare for her testimony.  See Jones, 2009 WL 1758740, at *6-7  ("Review of defense counsel's cross-examination of the officers indicates that defense counsel was well-versed in fingerprint identification procedures and he thoroughly questioned the witnesses about the fingerprint procedures in this case.").  Here, trial counsel chose the entirely reasonably strategy of using cross-examination to attempt to discredit the expert with questions on the technique used to obtain fingerprints and whether the fingerprint could have been placed at the scene at the time of the offense.  See id. at *6-7; Jury Trial Tr. at 426-27.

In his Reply, Crisp attempts to make more specific arguments as to what the fingerprint expert might have said.  See Reply at 4-5.  He contends that "[a]n expert would have been able to determine if the fingerprint was natural or planted."  However, Crisp does not contend that the hypothetical expert conclusion would be that the fingerprint had been

---

agreed to consult with an expert after his repeated demands that she do so, and his attorney told him the report was not helpful but refused to show him the report.  See id. at 1028.  Her refusal led the petitioner to suspect that she was being untruthful about actually consulting with an expert.  See id.  The Ninth Circuit concluded that "the distinctive facts of this case" may have resulted in ineffective assistance of counsel, and remanded the case for an evidentiary hearing.  See id. at 1029-30.  In this case, Crisp does not allege that trial counsel did not consult with an expert, that he was not able to see the report, or that any expert would have concluded that the print Foster found on the firearm did not belong to Crisp.  Additionally, the fingerprint was not the sole evidence connecting Crisp to the possession of the firearm because Gonzalez testified that he saw him running from the vehicle where the firearm was found.

planted nor does he explain how an expert would come to that conclusion.  This allegation is nothing more than rank speculation.  Additionally, Crisp argues that an expert could have reviewed the chain of custody and discussed if it was possible that the fingerprint predated Crisp's prior felony conviction.  <u>See</u> Reply at 4.  However, trial counsel as well as the Government questioned both Gonzalez and Foster about the chain of custody, highlighting that Gonzalez placed the gun in an evidence chute rather than handing it off to another person, and that Gonzalez accessed the gun to test fire it (albeit after FDLE analyzed the gun for fingerprints).  <u>See</u> Jury Trial Tr. at 177-180, 207, 320, 429-436.  Moreover, trial counsel specifically asked Foster, who agreed, that it was possible for the fingerprint to have been placed on the weapon prior to Crisp's initial felony conviction in 1996.  <u>See</u> <u>id.</u> at 426-27.  Having obtained that testimony, a reasonable attorney could have concluded that putting another expert on the stand to say the same thing would not have added any benefit to the defendant's case.  <u>See</u> <u>Brown</u>, 2010 WL 6405670, at *10.

As noted above, "[d]ecisions as to whether to call witnesses or ask particular questions must be regarded generally as tactical matters."  <u>Hernandez v. Wainwright</u>, 634 F. Supp. 241, 248 (S.D. Fla. 1986); <u>see also</u> <u>Duckett v. McDonough</u>, 701 F. Supp. 2d 1245, 1266-67 (M.D. Fla. 2010).  "The fact that the jury was not ultimately persuaded by counsel's strategy does not mean that representation was inadequate," and a defendant's disagreements with those strategies does not support a claim of ineffective assistance of counsel.  <u>Sanders v. Sec'y, Dep't of Corr.</u>, No. 08-cv-2509-T-23TGW, 2013 WL 1233127, at *23 (M.D. Fla. Mar. 27, 2013).  Crisp has not provided any specific allegations as to what testimony a fingerprint expert would have given, and accordingly, "[t]his Court must decline Petitioner's invitation to

engage in unguided speculation as to the value of the omitted testimony of  hypothetical witnesses." Hernandez, 634 F. Supp. at 248.   Thus, Crisp's fifth claim of ineffective assistance fails.

        **4.**      **Ineffective Assistance of Counsel Claims Seven and Eight:  Failure to Impeach**

Crisp next contends that trial counsel was ineffective because he failed to impeach LaDelfa based on her prior history of drug abuse and instead called her as a defense witness, failed to impeach Gonzalez with his prior inconsistent statements to dispatch, and failed to impeach Foster regarding the identity of the person who photographed the critical fingerprint. See Motion to Vacate at 16-21.  With regard to LaDelfa, Crisp alleges that she was suspended and ordered to attend drug rehabilitation.[17]  See Motion to Vacate at 16. Reviewing LaDelfa's limited testimony, it is apparent that the purpose for calling her as a witness was to show that there was no record of any photo identification of Crisp by Gonzalez in the police file.  See Jury Trial Tr. at 583-84.  Impeaching LaDelfa would have been inconsistent with that purpose.  Whether the decision to call her in the first place was the best decision is not the standard for whether Crisp received effective assistance of counsel; the Court asks only whether a reasonable attorney could have made the decision.  See Smith, 2006 WL 2578919, at *4.  Trial counsel appears to have been attempting to suggest that the photo identification either was never conducted in the first place or was inappropriately

---

[17]    Crisp also believes that LaDelfa should have been impeached because she testified that she had no personal knowledge of the events that took place on May 4, 2004, but signed an affidavit in support of a criminal complaint against Crisp based on personal knowledge.  See Motion to Vacate at 16-17.  However, a review of the affidavit discloses that LaDelfa averred that the facts in her affidavit were based on personal knowledge and information provided to her by other law enforcement officers.  See Criminal Complaint and Affidavit (Crim. Doc. No. 1) at 2.  Therefore, this argument is without merit.

conducted such that Gonzalez and the detective who showed him the photograph would not want to include it in the report. The Court does not find such a strategy to be unreasonable, and accordingly finds that Crisp's seventh claim of ineffective assistance of counsel is due to be denied.

Crisp's additional failure to impeach arguments are similarly insufficient to warrant relief. As to Gonzalez, Crisp argues that trial counsel should have questioned Gonzalez about his statement that he gave Crisp's name to the dispatcher when the report showed no such identification. See Motion to Vacate at 19; see Jury Trial Tr. at 87. Crisp also asserts that counsel should have explored the discrepancy between whether Gonzalez reported a suspicious van or a suspicious person. See Motion to Vacate at 19. The record belies these arguments because trial counsel did question Gonzalez about these discrepancies.[18]

---

[18]     Trial counsel conducted the following cross-examination:

Q:     You never called dispatch and told them that Todd Crisp was, in fact, the driver; did you?
A:     Yes, I did.
Q:     You did?
A:     Yes.
Q:     You mentioned before that the - - you had spoken to dispatch, and you've relied on dispatch logs before in testifying in this case; have you not?
A:     Yes, I have ,sir.
Q:     And you would agree that the dispatch logs are an accurate chronological statement of what happened; would you not?
A:     What does that mean, sir?
Q:     That the dispatch log is kept by the dispatcher; correct?
A:     The dispatcher enters it, correct.
Q:     And they enter both the information that's coming in, correct, and the time that it is; correct?
A:     Correct.
Q:     Now in this case, you said earlier that you told the dispatch that you had a suspicious vehicle and that Todd Crisp was the individual, is that right?
A:     Yes, sir.
Q:     In fact, isn't it true that you said it was a suspicious person and never made any mention of Todd Crisp as being the person who got out of the car?
A:     No, that's incorrect, sir.

See Jury Trial Tr. at 124-25, 133.  Moreover, he also called the dispatcher to the stand to testify that the dispatch records reflected that she did not hear Gonzalez mention Crisp's name and that he reported a suspicious person.  See id. at 466-69.  Therefore, through the combination of cross-examining Gonzalez and presenting the dispatch log and the dispatcher's testimony, trial counsel did present the alleged inconsistent statements to the jury.  As such his performance in this regard was neither deficient nor prejudicial to Crisp's defense.

Crisp's final impeachment argument relates to Foster's testimony regarding who photographed the fingerprint found on the firearm.  He submits a copy of the photograph of the fingerprint, labeled as Exhibit K to his Motion to Vacate, which includes descriptive information as to the size and other properties of the photographs and indicates that someone named Jerry captured the image.  See Motion to Vacate at 19.  Foster testified that Jerry Kraft was the photographer for FDLE in 2004, but that her notes reflected that someone named Lauren Crume actually took that particular picture.  See Jury Trial Tr. at 406-07.  When cross-examining Foster, trial counsel was not able to locate Exhibit K in order to confront her about this discrepancy.  See Motion to Vacate at 19 ("Mr. Brener, due, his lack of preparation, was about to impeach her testimony to that but could not find the document

---

   . . .

| | |
|---|---|
| Q: | Detective Gonzalez, is it your testimony that you actually said the name Todd Crisp over the dispatcher? |
| A: | Yes. |
| Q: | And is it your testimony also that you said it was a suspicious van, not a suspicious person? |
| A: | Yes. |

Jury Trial Tr. at 124-25, 133.

in question."). While this appears to be a mistake on the part of defense counsel, "[t]he test for ineffectiveness is not whether counsel could have done more; perfection is not required." Waters, 46 F.3d at 1518. Instead, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Hernandez, 634 F. Supp. at 244 (quoting Strickland, 466 U.S. at 686). Crisp fails to suggest the import of the photographer's identity or how counsel could have used the discrepancy to Crisp's advantage at trial. Here, any failure on the part of defense counsel to point out an inaccuracy in the recording of who took the photograph does not rise to the level of deficient performance nor has Crisp shown that it was material to whether Foster correctly identified the fingerprint on the weapon as belonging to Crisp. As Crisp has not sufficiently alleged deficient performance with regard to the failure to impeach either Gonzalez or Foster, his eighth claim of ineffective assistance of counsel is due to be denied.

### 5.    Ineffective Assistance of Counsel Claim Four: Conflict of Interest

"A criminal defendant's right to effective assistance of counsel is violated where the defendant's attorney has an actual conflict of interest that affects the defendant adversely." United States v. Rodriguez, 982 F.2d 474, 477 (11th Cir. 1993). "In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). A defendant who can demonstrate such a conflict does not need to show prejudice to obtain relief; however, "until a defendant shows that his counsel actively represented conflicting interests, he has not established the

36

constitutional predicate for his claim of ineffective assistance." Id. at 349-50.  The possibility of conflict is not enough; a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.  Id. at 350.

> The Eleventh Circuit has distinguished an actual conflict from a potential one:
>
> We will not find an actual conflict [of interest] unless appellants can point to specific instances in the record to suggest an actual conflict or impairment of their interests. . . . Appellants must make a factual showing of inconsistent interests and must demonstrate that the attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other.  If he did not make such a choice, the conflict remained hypothetical.

Smith v. White, 815 F.2d 1401, 1404 (11th Cir. 1987) (quoting Barham v. United States, 724 F.2d 1529, 1532 (11th Cir. 1984), abrogated on other grounds, as recognized by McConico v. Alabama, 919 F.2d 1543, 1546 (11th Cir. 1990)).  A conflict of interest may result from either simultaneous or successive representation of clients with adverse interests.  McConico, 919 F.2d at 1546.  Historically, the Eleventh Circuit has applied Sullivan as a two-part test, requiring a petitioner to show both actual conflict and adverse effects.  See Freund v. Butterworth, 165 F.3d 839, 858-59 (11th Cir. 1999).  Within this framework, to satisfy actual conflict, the petitioner must make a factual showing of inconsistent interests or point to specific instances in the record that demonstrate an actual impairment of the petitioner's interest.  Id. at 859.  Once a petitioner establishes an actual conflict of interest, he does not need to show prejudice—that the result of the trial would have been different without the conflict of interest—but instead must show "only that the conflict had some adverse effect on counsel's performance."  McConico, 919 F.2d at 1548.  To show adverse effects, the petitioner must satisfy three elements: "(1) the existence of a plausible alternative defense

strategy or tactic that might have been pursued; (2) that the alternative strategy or tactic was reasonable under the facts; and (3) a link between the actual conflict and the decision to forgo the alternative strategy of defense." Pegg v. United States, 253 F.3d 1274, 1278 (11th Cir. 2001).  The third element requires a petitioner to "establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." Freund, 165 F.3d at 860.

In Mickens v. Taylor, 535 U.S. 162, 171 n.5 (2001), the Supreme Court clarified that "the Sullivan standard is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect.  An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."  Although the Supreme Court's explanation changes the number of steps to apply, it does not alter the Court's analysis here. See, e.g., Quinto v. United States, Nos. 08-23335-CIV, 06-20319-CR-UNGARO, 2010 WL 5620946, at *9 n.14 (S.D. Fla. June 6, 2010) ("The undersigned is aware that the Supreme Court's ruling in Mickens v. Taylor effectively determined that the Eleventh Circuit's two-prong approach to the actual conflict scenario is incorrect. . . . However, this distinction does not alter the instant analysis." (internal citation omitted)).  The Court must still determine whether Crisp has shown "that his counsel actively represented conflicting interests" which adversely effected his representation. See id. at *9; see also Lombardo v. United States, 222 F. Supp. 2d 1367, 1381-85 (S.D. Fla. 2002) (creating new framework for addressing conflict of interest claims following Mickens in all cases); McCorkle v. United States, 325 F. App'x 804, 808 (11th Cir. 2009) (applying two-part test without discussing

effect of <u>Mickens</u>).[19]

Here, Crisp identifies a potential conflict in that he has alleged that trial counsel was representing Charles Wardlow, an individual then charged with murder, and that trial counsel encouraged Wardlow to provide "information about some things in Ft. Myers."  <u>See</u> Motion to Vacate at 10.  Crisp alleges that Wardlow implicated him as a suspect in a murder in Ft. Myers to Detective LaDelfa, and provides a copy of the warrant for Crisp's DNA for a murder charge, dated June 12, 2008.  <u>See</u> <u>id.</u> at 10-11; Exhibit G-1 to Motion to Vacate.  In response, the Government points out that Crisp does not explain how or when Wardlow supposedly implicated him, nor does he specify any instance in which trial counsel chose a course of action beneficial to Wardlow but harmful to Crisp.  <u>See</u> Response at 12-14.  Rather, Crisp's allegations amount to a potential conflict of interest in representing both Wardlow and Crisp. <u>See</u> Motion to Withdraw.  This conflict does not rise to the level of a constitutional defect, however, because nothing in the record indicates that this conflict adversely affected Crisp, i.e., that trial counsel did or did not take a course of action to protect one client over the other.

---

[19]    The Court in <u>Mickens</u> noted that it was leaving open the question of whether <u>Sullivan</u> applied outside the traditional setting of an attorney representing multiple defendants at the same time, such as in successive representation situations or where petitioner's counsel is alleged to have a personal or financial conflict.  <u>See</u> <u>Mickens</u>, 535 U.S. at 174-76.  Although the instant case does not involve concurrent representation of co-defendants, it does involve simultaneous representation of conflicting interests. Because Crisp alleges that trial counsel also represented a defendant in another case that was cooperating against him at the same time, and thus actively represented conflicting interests, the Court need not address the application of <u>Sullivan</u> and <u>Mickens</u> in cases involving successive representation.  <u>See</u> <u>Quinto</u>, 2010 WL 5620946, at * (analyzing overlapping representation of defendant and cooperating witness "under a simultaneous representation framework rather than a successive one").

In <u>McConico</u>, the Eleventh Circuit addressed a case of actual conflict where counsel represented the defendant in a criminal case as well as the defendant's wife in a civil suit to recover life insurance benefits for her brother, the person the defendant was accused of murdering. <u>McConico</u>, 919 F.2d at 1544-45. At trial, the defendant asserted the defense of self-defense, but such a theory was inconsistent with his wife's claim for insurance benefits because the policy excluded death resulting from participation in the commission of an assault or felony. <u>See id.</u> at 1545-48. Thus, counsel was in the position of having to choose between arguing that the victim was the initial aggressor during the incident to present a viable self-defense claim or that the victim was not the aggressor as necessary for the wife to obtain the insurance proceeds. <u>See id.</u> at 1547-48. When the defendant's wife took the stand at trial, defense counsel had to cross-examine her, his own client, which put him in "a situation of inherently divided loyalty because the success of one client depend[ed] on discrediting the other." <u>See id.</u> at 1546-47. Unlike Crisp's case, the inevitable choice the <u>McConico</u> defense counsel had to make created an actual conflict that adversely affected his client. <u>See id.</u> at 1546-49.[20] Here, the potential conflict involved a matter unrelated to the possession of the weapon, and Crisp does not make any specific allegations as to how trial counsel's representation of Crisp at trial would have conflicted with his representation of Wardlow.

---

[20]     Another clearer example of such divided interests is the case of <u>Perillo v. Johnson</u>, 205 F.3d 775 (5th Cir. 2000). In that case, defense counsel was actively representing two of three co-defendants involved in a double homicide, one of which testified against the other two in separate trials. <u>See id.</u> at 783-87. In conducting the cross-examination, trial counsel did not attempt to discredit his client-witness in any way. <u>See id.</u> at 788-92. This case is distinguishable from the instant case where trial counsel was representing defendants in completely separate matters.

Even if Wardlow had been giving information to the authorities regarding Crisp's involvement in another crime, Crisp has not provided any information as to how such a conflict adversely affected his interests at trial.   There is no indication that trial counsel presented or did not present any witnesses or did not ask particular questions that would have benefitted Wardlow but hurt Crisp or vice-versa.   In contrast, in <u>McConico</u>, the defendant was able to establish that he was adversely affected because his defense counsel chose not to call one witness, a four-year old child who had seen the victim threatening the defendant with a knife, and also chose not to challenge the defendant's wife's statements regarding the critical issue of whether the victim had a knife.   <u>See</u> <u>McConico</u>, 919 F.2d at 1548-49.

Here, trial counsel only sought to withdraw from Crisp's case when he thought that he would have to call Wardlow at Crisp's sentencing to address one of Crisp's prior offenses (although the Court was skeptical as to the relevance of this testimony).   <u>See generally</u> Motion to Withdraw; Withdrawal Hearing Transcript.   However, Wardlow is not alleged to have had any involvement with the conduct charged in the Indictment, and Crisp has not suggested any action that trial counsel took or failed to take during trial that was motivated by a need to protect Wardlow.   Crisp has not established any of the elements necessary to show adverse effects as a result of a conflict of interest.   There was no reasonable, alternate strategy that trial counsel could have pursued but did not due to his representation of Wardlow.   <u>Freund</u>, 165 F.3d at 860.   Therefore, Crisp has not established a Sixth Amendment violation of his right to counsel due to a conflict of interest.

### 6.     Ineffective Assistance of Counsel Claim Ten: Failure of Appellate Counsel to Bring Meritorious Claims on Appeal

A claim of ineffective assistance of appellate counsel requires the same showing as that for trial counsel.  Smith, 2006 WL 2578919, at *4; see also Sanders, 2013 WL 1233127, at *24.  Thus, a petitioner must show that appellate counsel's performance was deficient and that deficient performance caused prejudice.  Sanders, 2013 WL 1233127 at *24.  A showing of deficient performance on appeal requires a petitioner to establish that "counsel's failure to discover a non-frivolous issue and file a merits brief raising that issue fell outside the range of professionally acceptable performance."  Id.  Because courts look to the nature of the appellate process to assess performance, appellate counsel is not required "to raise every conceivable, non-frivolous ground for appeal when he believes that doing so would undermine the potential impact of the claims with the greatest likelihood of success."  Smith, 2006 WL 2578919, at *4 (citing Jones v. Barnes, 463 U.S. 745, 751-52 (1983)).  Instead, it is constitutionally permissible for appellate counsel to make tactical decisions not to raise those issues he believes to lack merit.  Id.  If appellate counsel failed to raise a non-frivolous claim, a petitioner must then show a reasonable probability that he would have prevailed on appeal if the issue had been raised.  Id. (citing Cross v. United States, 893 F.2d 1287, 1290 (11th Cir. 1990)); see also Sanders, 2013 WL 1233127, at *24 (citing Smith v. Robbins, 528 U.S. 259, 285-86 (2000)).

Crisp argues that his appellate counsel was ineffective for relying solely on trial counsel's investigation and arguments, rather than conducting his own investigation.  See Motion to Vacate at 24.  Crisp contends, without specifying, that "there was exculpatory

evidence" that he discovered himself, that appellate counsel would have discovered "more [m]eritorious claims," and that, had it not been for the other errors he asserts in his Motion to Vacate, Crisp would have had a reasonable probability of a different outcome at trial or appeal. Id. at 24-25. Other than obliquely referencing trial counsel's alleged errors, which the Court finds to be without merit, Crisp does not specify what issues he contends appellate counsel should have raised, much less that he likely would have prevailed on appeal if those issues had been raised. Smith, 2006 WL 2578919, at *4. Therefore, Crisp's tenth and final ineffective assistance of counsel claim fails.

### B.     Grounds Two, Three, Four, and Five:  Procedural Bar

The Government asserts that the claims raised in Ground Two—due process violation based on in-court and out-of-court identifications, Ground Four—prosecutorial misconduct, and Ground Five—actual innocence are procedurally barred because Crisp did not raise them on direct appeal. See Response at 22-26. Although the Government addresses Ground Three—that the arrest affidavit and resulting complaint were submitted with false testimony—on the merits, Crisp also did not raise this issue on direct appeal. Thus, the Court will also consider whether this claim is procedurally foreclosed. Crisp argues that his claims should not be procedurally barred because he received ineffective assistance of counsel. See Motion to Vacate at 26.

As noted above, "[a]bsent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error," United States v. Perry, No. 1:05-cr-42-MP-GRJ, 2014 WL

553664, at *6 (N.D. Fla. Feb. 11, 2014), or that the alleged "constitutional violation has probably resulted in the conviction of one who is actually innocent." Lynn, 365 F.3d at 1234 (internal citations omitted).   Because Crisp's fifth ground for relief is that he is actually innocent, the Court addresses this exception to the procedural bar against his remaining claims first.   "To be credible, a claim of actual innocence 'requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.'"   Scarlett v. Sec'y, Dep't of Corr., 404 F. App'x 394, 401 (11th Cir. 2010).

In his Motion to Vacate, Crisp does not rely on any new evidence not presented at trial to support his claim of actual innocence, but instead asserts that there was insufficient evidence to support his conviction.   See Motion to Vacate at 37.   However, the Eleventh Circuit has "recognized that 'actual innocence' means 'factual innocence, not mere legal insufficiency.'"   Scarlett, 404 F. App'x at 401 (quoting Johnson v. Fla. Dep't of Corr., 513 F.3d 1328, 1334 (11th Cir. 2008)).   Crisp also asserts that the errors of counsel, which include not permitting him to testify, and other constitutional violations, such as the suggestive photograph identification, the inappropriate comments from the Government, and LaDelfa's perjured affidavit, demonstrate that he is actually innocent.   Additionally, he declares that his fingerprint was not on the gun, but in no way accounts for Foster's testimony identifying the fingerprint as a match to Crisp's.   Despite his arguments, Crisp has failed to point the Court to any evidence that would "demonstrate that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" or "raise sufficient doubt

about his guilt to undermine confidence in the result of his trial." Id. (quoting Johnson, 513 F.3d at 1334).  Accordingly, he is not entitled to escape the procedural bar to review of the merits of those constitutional violations he alleges other than ineffective assistance of counsel.

To the extent Crisp is attempting to meet the alternative exception to procedural default of his remaining claims, which requires a showing of cause for failure to assert the alleged violations on direct appeal, such cause may include ineffective assistance of counsel. United States v. Nyhuis, 211 F.3d 1340, 1344 (11th Cir. 2000).  However, the claim of ineffective assistance of counsel must have merit, meaning that "the arguments the defendant alleges his counsel failed to raise were significant enough to have affected the outcome of his appeal."  Id.

In his second ground for relief, Crisp argues that Gonzalez's pre-trial, single-photograph identification and the subsequent in-court identification violated his due process rights.  See Motion to Vacate at 27-32.  Through his counsel, Crisp challenged the identification in a pre-trial motion to suppress, see Defendant's Motion to Suppress Photographic Identification and In-Court Identification and Incorporated Memorandum of Law (Crim. Doc. No. 67), which the Court denied after holding an evidentiary hearing.  See Clerk's Minutes (Crim. Doc. Nos. 88, 91).  Notably, Gonzalez testified that he identified Crisp, prior to being shown any photographs, by name on the day of the incident.  See Jury Trial Tr. at 83-84.[21]

---

[21]  Gonzalez testified:

Q:     And after the white van, the vehicle came to this abrupt stop, what did the occupant

45

The Court applies a two-part test to determine whether to suppress an identification under the due process clause, deciding first whether the original identification procedure was unduly suggestive, and if it was, then considering whether, under the totality of the circumstances, the identification was nonetheless reliable. Leon v. United States, Nos. CV608-034, CR605-010, 2008 WL 2901606, at *5 (S.D. Ga. July 28, 2008) (citing Dobbs v. Kemp, 790 F.2d 1499 (11th Cir. 1986)); see also United States v. Rodger, 521 F. App'x 824, 830 (11th Cir. 2013) (per curiam). The Court reviews the reliability of an identification based on five factors: "(1) the witness's opportunity to view the defendant, (2) the witness's degree of attention, (3) the accuracy of the description, (4) the witness's level of certainty, and (5) the length of time between the crime and the identification." Leon, 2008 WL 2901606, at *5 (citing Neil v. Biggers, 409 U.S. 188, 199 (1972)). Here, Gonzalez identified Crisp at the

---

|   | of that vehicle do? |
|---|---|
| A: | The driver, who was the sole occupant, got out of the driver's side door. |
| Q: | Right. |
| A: | Looked back at - - towards where I was, and proceeded to run westbound towards Shoemaker Boulevard. |
| Q: | When you say he looked back toward where you were, where were you at that time? |
| A: | Still in my police vehicle. |
| Q: | Did you have a clear view to him? |
| A: | Yes. |
| Q: | When the occupant of that vehicle, the driver, got out and looked back at you, did you make eye contact? |
| A: | Yes, sir. |
| Q: | Did you recognize that individual? |
| A: | Yes, I did. |
| Q: | Had you seen him before? |
| A: | Yes, I have. |
| Q: | Did you know who he was? |
| A: | Yes. |
| Q: | Did you know him by name? |
| A: | Yes. |
| Q: | Who was it? |
| A: | It was Todd Crisp. |

Jury Trial Tr. at 83-84.

scene, by name, albeit after observing him for a very short time frame of only a couple of seconds.  Gonzalez had seen Crisp before and was certain that he recognized him.  Even assuming the photograph identification that took place two days later was unduly suggestive, the identification was reliable based on the totality of the circumstances.  See Leon, 2008 WL 2901606, at *5 (where associate knew the defendant, had multiple opportunities to view him with a high degree of attention and identified him by his nickname, four of five factors weighed heavily in favor or finding reliability).  Given the circumstances of Gonzalez's identification of the defendant based on his knowledge of Crisp before the photograph identification, it is highly unlikely that raising this issue on appeal would have altered the outcome of Crisp's case.  Accordingly, Crisp cannot establish ineffective assistance of counsel as cause for failing to raise this issue, and it is procedurally barred.

In Crisp's next ground he contends that the affidavit supporting the criminal complaint against him contained perjury.  See Motion to Vacate at 33-35.  LaDelfa stated that her affidavit was based on personal knowledge and information provided to her by other law enforcement officers.  See Criminal Complaint and Affidavit (Crim. Doc. No. 1) at 2.  In the affidavit, she recounts Officer Gonzalez's account of the events that occurred on May 4, 2004, and states that Crisp had been convicted of a felony in 1997, and that the firearm Gonzalez located was manufactured in Brazil and therefore traveled in interstate commerce. See id. at 2-5.  At trial, Gonzalez testified that he had not spoken to Detective LaDelfa, leading Crisp to conclude that her statement that the affidavit was based on personal knowledge was false.  See Motion to Vacate at 33; Jury Trial Tr. at 166-167.  It is undisputed that LaDelfa did not have actual personal knowledge of what happened on the day Gonzalez

located the firearm in the vehicle.  <u>See</u> Jury Trial Tr. at 584.  However, because LaDelfa stated in her affidavit that she was relying on information provided to her, not necessarily through direct communication, the fact that her description of the events transpiring between Gonzalez and Crisp that day was not based on her personal knowledge was not a basis for counsel to argue that the affidavit contained false statements.

Additionally, Crisp complains that the affidavit failed to include Powell's statement that she left him in Tampa.  Powell testified at trial that she left Crisp in Tampa the weekend prior to the incident after a trip to Busch Gardens.  <u>See</u> Jury Trial Tr. at 21-22.  This statement, however, was not material to a finding of probable cause, and therefore, its omission was not a basis for counsel to challenge the affidavit or the validity of the Criminal Complaint.

Further, Crisp does not argue that the Government obtained any evidence that should have been excluded as a result of the allegedly unconstitutional arrest.  <u>See, e.g.</u>, <u>United States v. Martin</u>, 615 F.2d 318, 328 (5th Cir. 1980)[22] (explaining that, if an affidavit contained deliberate falsehoods or statements made with reckless disregard for their truth that were material to a finding of probable cause, then the remedy would be to void the warrant and suppress the evidence seized pursuant to it).  Indeed, a grand jury subsequently indicted Crisp, and he has not alleged that there were any improprieties in returning the Indictment against him.  Nothing in this record suggests that either trial or appellate counsel could have argued that the arrest affidavit contained information that was materially false or that it would have had any effect on the outcome of the trial or appeal.  Therefore, Crisp has not shown

---

[22]   In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

a meritorious constitutional claim that his attorney unreasonably failed to raise.  As such, this claim is also procedurally barred.

Crisp's fourth and final remaining ground in support of his Motion to Vacate is that the prosecutor impermissibly shifted the burden of proof to the defense by saying that Crisp ran with the keys to the vehicle containing the firearm when there had been no evidence that Crisp was seen running from the scene with his keys.  See Motion to Vacate at 36.  He also contends that the Government improperly vouched for Gonzalez by stating that he believed him, causing prejudice.  See id. at 36-37.  A meritorious claim of prosecutorial misconduct requires improper remarks that prejudicially affect the substantial rights of the defendant. United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991).  Improper bolstering occurs when the jury could reasonably believe, from the prosecutor's comments, that he indicated a personal belief in the witness's credibility.  Id.

> A jury could reasonably believe the prosecutor's indications if the prosecutor either places the prestige of the government behind the witness, by making explicit personal assurances of the witness'[s] veracity, or the prosecutor implicitly vouches for the witness'[s] veracity by indicating that information not presented to the jury supports the testimony.  In short, the government cannot argue the credibility of a witness based on the government's reputation or allude to evidence not formally before the jury.

Id. (internal citations omitted). Such improper comments, however, result in a denial of due process only when a reasonable probability exists that, but for the comments, the outcome of the proceeding would have been different.  Id. at 1206-07; see also United States v. Hernandez, 145 F.3d 1433, 1438 (11th Cir. 1998) ("In order to assess the prejudicial impact of a prosecutor's statements, we must evaluate them in the context of the trial as a whole and assess their probable impact on the jury.").

In this case, Crisp appears to be arguing that the Government alluded to evidence not before the jury, specifically that Crisp was seen running with the keys to the vehicle, and that the prosecutor expressed his personal belief in Gonzalez's credibility. See Motion to Vacate at 36. Upon review of the Closing Argument Transcript, the Court does not find any support for Crisp's contentions. The Government argued that Gonzalez observed Crisp running away from the van, and later suggested that his family showed up at the scene because he called them. See Closing Tr. at 4, 6. The reference to the keys to the van was argument based on the evidence from the Enterprise representative that the van was returned with its keys, yet Powell had to have the vehicle towed away because she did not have the keys on the day of the incident. See id. at 8-10.[23] Drawing such conclusions from the evidence is proper during closing argument, the sole purpose of which is to assist the jury in analyzing the

---

[23]    Specifically, the Government argued:

Remember, when Tyroncia first arrived at the scene, she didn't have the keys to the van. She was there briefly and then she left the scene. Then she came back again. She still didn't have the keys. Why didn't she have the keys? Because the defendant had the keys, ladies and gentlemen. Remember, the defendant drove the van before stopping abruptly and running away, and when he took off, there were no keys left behind in the van but there was no damage to the ignition. There was no damage to the steering column. There was nothing to indicate this was a stolen vehicle, if you recall the testimony of Officer Gonzalez. And when the van was turned in that day, while Tyroncia was charged for the broken window, she was not charged for any missing keys. We had Sasha Bernstein testify and point out with respect to the State's exhibit concerning the accident report and the rental contract. No charge for missing keys.

And if you recall, Ms. Bernstein testified that Tyroncia didn't - - did not have the insurance to avoid a charge for non-returned keys. Ms. Bernstein testified that a charge for missing keys would have appeared on the contract. In this case, ladies and gentlemen, the keys were returned with the vehicle. The contract bears that out. It didn't show a charge for missing keys. So again, ask yourself, how did she get the keys back to return when she returned the car? I submit to you at the time the car was ultimately returned and she was charged with respect to the broken back window, I submit to you that she had gotten the keys back from the defendant.

Closing Tr. at 8-9.

evidence.  Bryant v. United States, Nos. 2:10-cv-8044-RDP-JHE, 2:07-cr-389-RDP-RRA, 2013 WL 4079339, at *14 (N.D. Ala. Aug. 13, 2013) (quoting United States v. Iglesias, 915 F.2d 1524, 1529 (11th Cir. 1990)).  "[T]he prosecution is entitled to offer its theory of events and articulate inferences that may be reasonably drawn from the evidence that was before the jury."  Id.  (citing Jones v. Sec'y, Dep't of Corr., 607 F.3d 1346, 1350 (11th Cir. 2010)).  As to Gonzalez's credibility, the Government argued that Gonzalez identified Crisp as the driver, and then pointed to the driver's license check that he requested on that same day, May 4, 2004, the printout of which was received in evidence, as corroboration of his testimony.  See Closing Tr. at 11.  This is not impermissible, as the Government is not forbidden from arguing credibility, only from doing so "based on the reputation of the government office or on evidence not before the jury."  Eyster, 948 F.2d at 1207.  Based on the above, the Government did not make any improper remarks during closing arguments and Crisp's argument to the contrary is without merit.

Having reviewed the validity of Crisp's second, third, fourth, and fifth grounds to support his Motion to Vacate, the Court concludes that he has not established ineffective assistance of counsel sufficient to escape his failure to raise these claims on direct appeal. Crisp's appellate counsel was not ineffective for failing to raise any of the above claims reasonably considered to be without merit.  See Nyhuis, 211 F.3d at 1345.  Accordingly, these claims are procedurally barred and Crisp's Motion to Vacate is due to be denied on these grounds.

**VI.     Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)**

If Crisp seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). To make this substantial showing, Crisp "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Slack, 529 U.S. at 484).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED:**

1. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. No. 1) and Petitioner's Motion to Vacate, Correct, or Set Aside Sentence Imposed Pursuant to 28 U.S.C. § 2255 (Doc. No. 7) are **DENIED.**

2. If Crisp appeals the denial of the Motions, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

3. The Clerk shall enter judgment in favor of the Government and against Crisp, and close the file.

**DONE AND ORDERED** in Chambers, this 31st day of March, 2014.

**MARCIA MORALES HOWARD**
United States District Judge

lc16
Copies to:
Counsel of Record
Petitioner